Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Russell, S.J.

DAX A. ELLISON                              OPINION BY
                                   SENIOR JUSTICE CHARLES S. RUSSELL
v.   Record No. 060482                    January 12, 2007

COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      Michael C. Allen, Judge

     In a civil proceeding under Code § 37.2-900 et seq., Dax

A. Ellison was found to be a sexually violent predator and was

involuntarily committed to the custody of the Department of

Mental Health, Mental Retardation and Substance Abuse Services

(the Department) for secure inpatient treatment.  At his civil

trial and over his objection, the court permitted the

Commonwealth to introduce evidence from an earlier criminal

trial in which Ellison had been tried for rape and acquitted

by a jury.  This appeal challenges the correctness of the

trial court's decision to admit that evidence.

                       Facts and Proceedings

     On August 19, 1998, pursuant to his guilty pleas, Ellison

was convicted by the Circuit Court of Chesterfield County of

abduction and rape of a female victim in that jurisdiction.

He was sentenced to a 50-year term of imprisonment, with 42

years and 7 months suspended.

On May 9, 2005, the Attorney General filed for the Commonwealth, in the same court, a petition for the civil commitment of Ellison as a sexually violent predator pursuant to the Sexually Violent Predators Act (SVPA), Code § 37.1-70.1 et seq.[1]  After a hearing, the trial court found probable cause to believe that Ellison was a sexually violent predator and ordered the Department of Corrections to retain custody of him until the final disposition of this case.  At a bench trial on September 21 and 22, 2005, the court heard expert testimony and received other evidence concerning Ellison's conduct dating back to his childhood, including his behavior while incarcerated.  At the conclusion of the trial, the court found that Ellison was a sexually violent predator.  The case was continued and the Department was directed to file a written report suggesting possible alternatives to full commitment.

After consideration of that report and other evidence, the court found by clear and convincing evidence that no suitable alternatives to full commitment existed, that Ellison did not qualify for conditional release, and that he remained a sexually violent predator.  He was committed to the

---

[1] Title 37.1 was repealed by Acts 2005 ch. 716, and was reenacted as Title 37.2 effective October 1, 2005.  The SVPA now appears as Code § 37.2-900 et seq.  That change took effect while this proceeding was pending in the trial court.

Department for inpatient hospitalization and the case was continued for one year for a further hearing to determine whether he would then remain a sexually violent predator.

In an unrelated case tried in the Circuit Court of the City of Petersburg in 2002, Ellison had been charged with statutory burglary, rape, forcible sodomy, and inanimate object penetration committed against a different female victim in that city on December 18, 1997. That case went to a jury trial in which the jury found Ellison not guilty of all charges.

In the trial of the present case, the Commonwealth sought to admit the testimony of the Petersburg victim as to Ellison's conduct in Petersburg on December 18, 1997. Ellison, by counsel, filed a motion in limine to exclude any evidence concerning the Petersburg case on the ground that he had been acquitted of that charge. The trial court denied the motion and, in the trial of the present case, the Petersburg victim testified for the Commonwealth, over Ellison's objection, that he had in fact raped her in Petersburg on December 18, 1997.

We awarded Ellison an appeal.

Analysis

Ellison's appeal is susceptible to an initial impression impacting cherished principles concerning collateral estoppel and double jeopardy, both of which he relies on.  Closer examination, however, dispels those concerns.  Although the news media sometimes report that a criminal defendant has been tried and "found innocent" of the charges against him, acquittal in a criminal trial does no such thing.  Because of the stringent standard of proof the law imposes upon the prosecution, juries must acquit unless they find each element of the crime charged to have been proved beyond a reasonable doubt.

In a line of cases extending back to Draper v. Commonwealth, 132 Va. 648, 664-65, 111 S.E. 471, 476 (1922), instructions were given in Virginia which told the jury, in varying language, that it was not sufficient that they believe the guilt of the defendant to be probable, or even more probable than his innocence, but that the jury must find the evidence sufficient to exclude every reasonable hypothesis of his innocence before they might find him guilty.[2]  Thus, the

---

[2] See M. Ray Doubles, Emanuel Emroch, & Robert R. Merhige, Jr., Virginia Jury Instructions §§ 100.13-.14 at 529-32 (1964).  An instruction using a variant of this language was approved in Smith v Commonwealth, 136 Va. 677, 682, 116 S.E. 246, 248 (1923), but later criticized in Carson v. Commonwealth, 188 Va. 398, 411-12, 49 S.E.2d 704, 710 (1948).

4

only conclusion that can be drawn from a jury's verdict of "not guilty" is that the jury did not find the evidence sufficient to prove each essential element of the charged offense beyond a reasonable doubt. The jury might well have found the defendant's guilt probable, even more probable than his innocence, and still have quite properly acquitted him. With that background, we now turn to the specific arguments Ellison makes on appeal.

## Collateral Estoppel

Ellison argues that the Commonwealth, having suffered an adverse final judgment in the Petersburg case, was collaterally estopped from attempting to prove, in the present case, that he had raped the Petersburg victim on December 18, 1997. The doctrine of collateral estoppel precludes the same parties to a prior proceeding from litigating in a later proceeding any issue of fact that actually was litigated and was essential to the final judgment in the first proceeding. Whitley v. Commonwealth, 260 Va. 482, 489, 538 S.E.2d 296, 299 (2000). Before the doctrine may be applied, four elements

---

It was still in use in 2001. Black v. Commonwealth, 262 Va. 764, 795, 553 S.E.2d 738, 756 (2001) (Hassell, J., dissenting). Although its precise language no longer appears in Virginia Model Jury Instructions, the current language expresses the same principle: "[S]uspicion or probability of guilt is not enough for a conviction." 1 Virginia Model Jury Instructions – Criminal, No. 2.100 (repl. ed. 2006).

must be met: (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated in the second proceeding must have actually been litigated in the first; (3) that factual issue must have been actually decided and essential to the judgment in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied. Id.

We do not agree with Ellison's contention that all four of the foregoing elements are present here. As noted above, the acquittal in the Petersburg case was not a finding that Ellison did not engage in the attack on that victim; the jury in that case may well have found that it was more likely than not that the conduct occurred. The issue specifically resolved in the Petersburg case was whether the evidence proved beyond a reasonable doubt that Ellison had raped that victim. A finding that he did not rape that victim was not an actual and necessary part of the disposition of that criminal case. Thus, the second and third elements prerequisite to the application of the doctrine of collateral estoppel are absent here.[3]

_____

[3] The Commonwealth argues on appeal that the first element is also lacking, contending that the parties to the two proceedings are not the same: The Commonwealth was the moving party in the Petersburg case, represented by the Commonwealth

6

## Double Jeopardy

Ellison argues that, because the trial court's finding in the present case operates to deprive him of his liberty, the admission of the Petersburg victim's testimony offends the Double Jeopardy Clauses of both the Constitution of the United States and the Constitution of Virginia. Both constitutions, in very similar language, afford protection against a second criminal prosecution for the same offense after an acquittal. Compare U.S. Const. amend. V and Va. Const. art. I, § 8. "Jeopardy," as used in these constitutional provisions, means "the danger of conviction." Greenwalt v. Commonwealth, 224 Va. 498, 500, 297 S.E.2d 709, 710 (1982).

The Supreme Court of the United States considered the question now before us in Dowling v. United States, 493 U.S. 342, 348 (1990). The Supreme Court there refused to extend the collateral estoppel component of the Double Jeopardy Clause to exclude relevant and probative evidence "simply because it relates to alleged criminal conduct for which a defendant has been acquitted." Id. The Court noted that its decision was consistent with prior cases in which it had held that an acquittal in a criminal case did not preclude the

---

Attorney; the Attorney General, acting under statutory authority granted by Code § 37.2-915 is the moving party in this SVPA case. We consider that to be a distinction without

Government from relitigating an issue when it was presented in a subsequent case governed by a lower standard of proof.  Id. at 349 (citing United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984)).

In Shivaee v. Commonwealth, 270 Va. 112, 128, 613 S.E.2d 570, 579 (2005), we held that Virginia's SVPA survived constitutional due process scrutiny and did not offend either state or federal double jeopardy protections.  We came to that conclusion for reasons similar to those articulated by the Supreme Court in Kansas v. Hendricks, 521 U.S. 346 (1997), wherein that Court upheld the constitutionality of Kansas statutes very similar to Virginia's SVPA.  The determinative factor avoiding the impact of the Double Jeopardy Clauses was that Kansas' SVPA was a civil enactment and was "non-punitive."  It was not adopted to punish an offender or to deter crime, but was instead a " 'civil commitment scheme designed to protect the public from harm.' "  Shivaee, 270 Va. at 125-26, 613 S.E.2d at 577-78 (quoting Hendricks, 521 U.S. at 361).

The standard of proof adopted by the SVPA is proof by clear and convincing evidence.  Code § 37.2-908(C).  We have held that standard to meet the demands of due process.

---

difference and do not agree with the Commonwealth in that regard.

8

*Shivaee*, 270 Va. at 126, 613 S.E.2d at 578. There, we noted that the Supreme Court, in *Addington v. Texas*, 441 U.S. 418, 432-33 (1979), approved that standard with respect to civil commitment cases, and left to the states the decision whether to adopt it or the more stringent standard of proof beyond a reasonable doubt. *Shivaee*, 270 Va. at 126, 613 S.E.2d at 578. Because the lesser standard is applied in Virginia SVPA cases, and because such cases are civil and not punitive in nature, the introduction, in such a case, of factual evidence presented in a prior criminal case, even one that resulted in an acquittal, does not offend the double jeopardy protections of either the federal or Virginia constitutions. *See Dowling*, 493 U.S. at 348-49; *Shivaee*, 270 Va. at 125-26, 613 S.E.2d at 578.

### Evidentiary Issue

The trial court also admitted a copy of the transcript of the testimony of the victim at the Petersburg trial, which was consistent with her testimony in the present case, although somewhat more detailed. Ellison objected to its admission, and assigns error to the trial court's ruling admitting it, on the ground that it came as a surprise and that the Commonwealth had violated a discovery order directing disclosure of all documents "referred to, relied upon, or reviewed . . . by any expert for the Commonwealth." We find

no merit in that assignment because Ellison makes no contention that the Commonwealth's expert witness ever saw or otherwise relied on the transcript. The discovery order did not require the Commonwealth to produce all documents it intended to offer in evidence. The transcript was equally available to the Commonwealth and to Ellison. Ellison could have contacted the court reporter, at any time, to request preparation of a copy of the transcript, and could have sought an order requiring the Commonwealth to pay the court reporter for Ellison's copy of the transcript.

## Conclusion

For the reasons stated, we hold that the evidence objected to was barred neither by the doctrine of collateral estoppel nor by the constitutional protections against double jeopardy. Accordingly, we will affirm the judgment of the trial court.

Affirmed.