PRESENT: All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 072412

OPINION BY JUSTICE CYNTHIA D. KINSER
January 16, 2009

FREDDIE LEE WYNN

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
James F. D'Alton, Jr., Judge

In this appeal, the Commonwealth challenges two evidentiary rulings by the circuit court during a trial under the Civil Commitment of Sexually Violent Predators Act (the SVPA), Code §§ 37.2-900 through -920.  Because the circuit court did not err by refusing to admit hearsay testimony concerning unadjudicated allegations of sexual misconduct and by admitting only a few pages of a mental health expert witness' written report, we will affirm the circuit court's judgment.

I.  MATERIAL FACTS AND PROCEEDINGS

The Commonwealth filed a petition in the circuit court for the civil commitment of Freddie Lee Wynn as a sexually violent predator under the SVPA.[1]  At the time the Commonwealth filed its petition, Wynn was incarcerated on two convictions for aggravated sexual battery of a child under age thirteen in violation of Code § 18.2-67.3.  Those convictions qualified as

_____

[1] The SVPA defines a sexually violent predator as "any person who (i) has been convicted of a sexually violent offense . . . and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior,

sexually violent offenses under Code § 37.2-900.  After the circuit court determined that probable cause existed to believe Wynn is a sexually violent predator pursuant to Code § 37.2-906, Wynn elected to have a trial by jury.  See Code § 37.2-908(B).  At the conclusion of the evidence, the jury returned a verdict finding that Wynn is not a sexually violent predator.  Subsequently, the circuit court entered an order in accordance with the jury verdict.

Two evidentiary rulings by the circuit court during the jury trial are at issue in this appeal.  Those rulings concerned the testimony and written report of Glenn Rex Miller, Jr., Ph.D., who performed a mental health examination of Wynn pursuant to Code § 37.2-904(B).  Dr. Miller was the only mental health expert who testified at the trial.  In both his written report and trial testimony, Dr. Miller stated that Wynn suffers from pedophilia, paraphilia, and antisocial personality disorder.  Because of Wynn's mental abnormalities and personality disorder, Dr. Miller concluded that Wynn finds it difficult to control his predatory behavior, which makes him likely to commit sexually violent acts.  In sum, Dr. Miller opined that Wynn meets the criteria as a sexually violent predator pursuant to Code § 37.2-900.

which makes him likely to engage in sexually violent acts."
Code § 37.2-900.

2

The first evidentiary ruling occurred during the Commonwealth's direct examination of Dr. Miller. The Commonwealth attempted to elicit testimony about allegations of sexual misconduct by Wynn made by children other than the victim involved in Wynn's two aggravated sexual battery convictions. Dr. Miller had learned about those allegations, which concerned sexual abuse that supposedly occurred during the same time frame as the sexual batteries for which Wynn was convicted, by reviewing documents in a file maintained by the Assistant Commonwealth's Attorney who had prosecuted Wynn. When the Commonwealth asked Dr. Miller to relate specific information about those other allegations, Wynn objected, stating that the allegations were "hearsay upon hearsay" and he could not cross-examine either the accuser, the person who prepared the documents detailing the allegations, or the individual who created the file. In response, the Commonwealth asserted the allegations constituted information Dr. Miller relied upon in arriving at his conclusions and the jury could decide what weight to give his opinions based on those allegations.

The circuit court decided Dr. Miller could testify that there were allegations from other children, but had to omit the specific details of those allegations. The court stated, "I think you are going to have to limit it to that there were other accusations from other children in this and leave it at that."

When the Commonwealth resumed its direct examination of Dr. Miller, it asked two questions about the other allegations: "Doctor, did you review records regarding additional allegations made against Mr. Wynn?" and "Did you consider those in reaching your conclusions about his risk assessment and diagnosis?" Dr. Miller responded affirmatively to both questions. Notably, the Commonwealth limited its question to whether there were other allegations against Wynn and did not ask if those accusations came from children, even though the circuit court ruled that the Commonwealth could do so. Despite the circuit court's ruling, the jury did hear some details regarding the accusations by other children.

The second evidentiary ruling occurred at the end of Dr. Miller's direct examination. At that point, the Commonwealth sought to admit into evidence Dr. Miller's written report concerning his examination of Wynn. Wynn objected on the basis that Dr. Miller's report contained a significant amount of hearsay and his testimony was "the best evidence." Wynn specifically pointed to the portions of the report in which Dr. Miller discussed in detail the sexual abuse allegations from other children, Wynn's threats of suicide, and the conclusions of a psychologist who had evaluated Wynn when he was incarcerated in Montana.

4

The circuit court admitted into evidence page one and pages twelve through fifteen of Dr. Miller's fifteen-page report. Page one discussed, among other things, the purpose of the evaluation and the sources of information he had utilized. The other admitted pages included Dr. Miller's assessments of Wynn's personality and risk for re-offending, Dr. Miller's diagnoses of Wynn's mental abnormalities and personality disorder, and Dr. Miller's conclusions that Wynn satisfied the criteria to be classified a sexually violent predator.

## II. ANALYSIS

On appeal, the Commonwealth claims the circuit court erred "in prohibiting the expert from testifying to the additional allegations of sexual misconduct" and "in prohibiting the Commonwealth from introducing the expert's entire report." Generally, we review a circuit court's evidentiary rulings under an abuse of discretion standard. See, e.g., John v. Im, 263 Va. 315, 320, 559 S.E.2d 694, 696 (2002). However, "[a] 'trial court has no discretion to admit clearly inadmissible evidence because "admissibility of evidence depends not upon the discretion of the court but upon sound legal principles."'" Norfolk & Western Ry. Co. v. Puryear, 250 Va. 559, 563, 463 S.E.2d 442, 444 (1995) (quoting Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986) (quoting Crowson v. Swan, 164 Va. 82, 92, 178 S.E. 898, 903 (1935))). Evidence that is hearsay

5

and does not fall under an exception is clearly inadmissible.

See, e.g., Teleguz v. Commonwealth, 273 Va. 458, 481, 643 S.E.2d 708, 723 (2007) ("In the absence of any applicable exception to the hearsay rule which would have rendered the testimony admissible, we hold that the trial court erred in admitting the testimony.") (citation omitted); Setliff v. Commonwealth, 162 Va. 805, 814, 173 S.E. 517, 520 (1934) (holding evidence is "clearly hearsay and for that reason inadmissible in any form before the jury").

The SVPA requires a prisoner to undergo a mental health evaluation "by a licensed psychiatrist or a licensed clinical psychologist who is . . . skilled in the diagnosis, treatment, and risk assessment of sex offenders," Code § 37.2-904(B), when the prisoner's name is forwarded to the Commitment Review Committee pursuant to Code § 37.2-903.  Under the SVPA, a psychiatrist or clinical psychologist who satisfies the qualifications set forth in Code §§ 37.2-904(B) or -907 may testify at trial "as to his diagnosis, his opinion as to whether the respondent meets the definition of a sexually violent predator, his recommendation as to treatment, and the basis for his opinions."  Code § 37.2-908(C).  The SVPA, however, contains no express provisions allowing the admission of hearsay evidence during an expert witness' testimony at a SVPA trial.  Thus, "we will apply the general rules applicable to expert testimony in

other civil cases" to address the issue before us. Commonwealth v. Allen, 269 Va. 262, 274, 609 S.E.2d 4, 11–12 (2005).

In McMunn v. Tatum, 237 Va. 558, 560, 379 S.E.2d 908, 909 (1989), the Court decided whether an expert witness, in relating the basis for the expert opinion, could testify about the hearsay opinions of other persons. We concluded that Code § 8.01-401.1, which governs the admissibility of expert witness testimony in a civil action, "does not authorize the admission in evidence, upon the direct examination of an expert witness, of hearsay matters of opinion upon which the expert relied in reaching his own opinion." Id. at 566, 379 S.E.2d at 912; accord May v. Caruso, 264 Va. 358, 361, 568 S.E.2d 690, 691–92 (2002); Weinberg v. Given, 252 Va. 221, 224, 476 S.E.2d 502, 503 (1996); CSX Transportation, Inc. v. Casale, 247 Va. 180, 182–83, 441 S.E.2d 212, 214 (1994). The Court explained that "[n]o litigant in our judicial system is required to contend with the opinions of absent 'experts' whose qualifications have not been established to the satisfaction of the court, whose demeanor cannot be observed by the trier of fact, and whose pronouncements are immune from cross-examination." McMunn, 237 Va. at 566, 379 S.E.2d at 912; see also Weinberg, 252 Va. at 225, 476 S.E.2d at 503.

The Commonwealth, however, asserts several reasons why it believes the specific details of the other unadjudicated

7

allegations of sexual misconduct by Wynn were admissible at his SVPA trial: (1) the evidence tended to prove Wynn's mental condition and risk of re-offending and was therefore more probative than prejudicial; (2) the allegations were a part of the factual basis for Dr. Miller's opinions; (3) the allegations constituted unadjudicated conduct, which is admissible pursuant to this Court's decision in Ellison v. Commonwealth, 273 Va. 254, 639 S.E.2d 209 (2007); (4) an SVPA proceeding is similar to the "future dangerousness" determination during the sentencing phase of a capital murder trial and the same evidentiary rules should therefore apply; (5) the allegations were not hearsay because they were not offered for the truth of the matter asserted but to show the factual basis for Dr. Miller's opinions; and (6) even if the evidence was hearsay, the provisions of Code § 37.2-908(C) created an exception to the hearsay rule for SVPA proceedings. We do not agree with any aspect of the Commonwealth's position.

That the details of the other allegations of sexual misconduct may have been probative to the issues before the circuit court does not answer the question whether the evidence was, nevertheless, inadmissible hearsay. Furthermore, the Commonwealth did indeed offer the allegations for the truth of the matter asserted. At no time before the circuit court did the Commonwealth suggest otherwise.

8

However, the Commonwealth is correct in its assertion that allegations or unadjudicated charges of sexual offenses have clinical significance to licensed psychiatrists and licensed clinical psychologists who perform mental health evaluations pursuant to Code § 37.2-904(B).  We do not question the propriety of Dr. Miller and other mental health experts considering and using such allegations in formulating their opinions as to whether a prisoner qualifies as a sexually violent predator.  But see Commonwealth v. Garrett, 276 Va. 590, 607, 667 S.E.2d 739, 749 (2008) (holding that "three carnal knowledge petitions standing alone were legally insufficient to permit [an expert witness] to draw the inference that [the prisoner] had in fact committed those offenses in the absence of any additional evidence concerning the circumstances surrounding the Commonwealth's decision to dismiss those petitions").  As Dr. Miller explained, "charges are considered . . . a risk factor for individuals depending on how many different times they have been charged with sex offenses, even if they weren't convicted."  According to Dr. Miller, psychologists look at the "quality of the offenses and what happened" as opposed to actual convictions since they may be the result of plea bargains that reduced the original charges.

Likewise, Code § 37.2-908(C) provides that an expert witness testifying at an SVPA trial may state the "basis

for his opinions."  Similarly, pursuant to Code § 8.01-401.1, an expert witness may rely upon "facts, circumstances or data made known to . . . such witness" in formulating an opinion; those "facts, circumstances or data . . . , if of a type normally relied upon by others in the particular field of expertise in forming opinions and drawing inferences, need not be admissible in evidence." Neither of these statutes, however, allows for the introduction of otherwise inadmissible hearsay evidence during the direct examination of an expert witness merely because the expert relied on the hearsay information in formulating an opinion.  See McMunn, 237 Va. at 565, 379 S.E.2d at 912 ("[Code § 8.01-401.1 is] silent . . . with respect to the admissibility of the otherwise inadmissible information upon which the expert's opinion is based, at least upon the expert's direct examination.").

The Commonwealth, however, asserts that our holding in McMunn should be limited to "hearsay matters of opinion" upon which an expert relied.  See id. at 566, 379 S.E.2d at 912.  We do not agree.  Whether an expert relies upon the opinions of others or allegations of sexual misconduct in formulating an opinion, both constitute hearsay.  While certain information may be of the type routinely used by experts in a given field of expertise when formulating

their opinions, a litigant, nevertheless, should not be required to contend with such hearsay information because the trier of fact cannot observe the demeanor of the speaker and the statements cannot be tested by cross-examination.[2]  See id.

The inadmissibility of the hearsay evidence concerning the other allegations of sexual misconduct by Wynn is not altered by our decision in Ellison.  There, the issue was whether the Commonwealth, in an SVPA trial, could introduce evidence from a prior criminal trial in which the prisoner had been acquitted of rape.  273 Va. at 256, 639 S.E.2d at 211.  We held that the introduction of such evidence did not offend double jeopardy protections of the Virginia and United States constitutions, nor did it violate the principles of collateral estoppel.  Id. at

---

[2] The Commonwealth asserts that our resolution of the issue before us should be guided by the decision in United States v. Leeson, 453 F.3d 631 (4th Cir. 2006).  Although we recognized in McMunn that Code § 8.01-401.1 was based, in part, on Federal Rules of Evidence 703 and 705, there is a significant difference between our statute and Federal Rule of Evidence 703.  In pertinent part, the rule states: "Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."  (Emphasis added.)  Section 8.01-401.1 does not contain this proviso.  The issue in Leeson was whether an expert witness' testimony about statements made by two prison inmates concerning the defendant was admissible under Rule 703. 453 F.3d at 636.  Thus, the holding has no relevance to the issues in this appeal.

261, 639 S.E.2d at 214. Moreover, the victim of the alleged rape testified at the SVPA trial, see id. at 257, 639 S.E.2d at 211-12, so no question arose as to the admissibility of the testimony on hearsay grounds.

Finally, the Commonwealth asserts that proceedings under the SVPA are analogous to the future dangerousness determination at the sentencing phase of a capital murder trial because both proceedings require a fact-finder to decide the likelihood of an individual's engaging in criminal conduct in the future. Since evidence of a defendant's unadjudicated criminal conduct is admissible at a capital murder sentencing proceeding to determine future dangerousness, see Beaver v. Commonwealth, 232 Va. 521, 528-29, 352 S.E.2d 342, 346-47 (1987), the Commonwealth contends the evidence regarding the unadjudicated allegations of Wynn's sexual misconduct was admissible at his SVPA trial. The Commonwealth's argument overlooks the provisions of Code § 19.2-264.4. The statute lists the types of evidence relevant in the sentencing phase of a capital murder trial, but states that such evidence "may be admissible, subject to the rules of evidence governing admissibility." Code § 19.2-264.4(B). Also, the fact that a trial court may consider hearsay evidence contained in a postsentence report prepared and filed in accordance with Code §§ 19.2-264.5 and -299, see O'Dell v. Commonwealth, 234 Va. 672,

701-02, 364 S.E.2d 491, 508 (1988), does not alter our conclusion.

Thus, we conclude the circuit court did not err by refusing to allow Dr. Miller to testify about the details of the other alleged acts of sexual misconduct by Wynn. Even though Dr. Miller relied on those allegations in formulating his opinions, the information came from sources unavailable for cross-examination. The evidence clearly fell within the realm of hearsay and was, therefore, inadmissible.

With regard to the evidentiary ruling concerning Dr. Miller's written report, the Commonwealth complains that the circuit court redacted more sections of the report than the portions identified by Wynn as examples of the hearsay contained in the report. Wynn's objection, however, was not as limited as the Commonwealth suggests. Instead, Wynn argued to the circuit court that the report contained a "significant amount of hearsay" and was "replete with various items which quite frankly are inadmissible." Wynn was correct. Hearsay abounded in the redacted portions of the report. For the reasons already discussed in this opinion, the hearsay information in Dr. Miller's report was not admissible.

The Commonwealth further asserts that the jury "was given a dissected and incomplete report with only portions of Dr. Miller's opinions and no explanation for the bases of those

13

opinions."  In comparing the redacted portions of the report with Dr. Miller's testimony, we find the jury actually learned much of the redacted information from Dr. Miller. Significantly, Dr. Miller testified at length concerning his opinions and the basis for those opinions.

Finally, during oral argument before this Court, the Commonwealth asserted that Dr. Miller's report was akin to a report by a mental health expert in a general commitment proceeding for involuntary admission.  According to the Commonwealth, such a report is admissible by statute and, by implication, Dr. Miller's report was therefore admissible.  The provisions of Code § 37.2-815 require a mental health professional examining a person who is the subject of a hearing for involuntary admission to "provide a written report of his examination prior to the hearing."  Code § 37.2-815(C).  The written report "may be accepted into evidence unless objected to by the person or his attorney, in which case the examiner shall attend in person or by electronic communication."  Id. Additionally, prior to a civil commitment hearing for involuntary admission, "[t]he district court judge or special justice shall require a preadmission screening report from the community services board," which "shall be admissible as evidence of the facts stated therein."  Code § 37.2-816.  The report must include conclusions and recommendations as to

14

whether a person should be involuntarily committed.  Id.  In the absence of similar express statutory language in the SVPA, we are unwilling to hold that written reports by mental health expert witnesses are automatically admissible in SVPA trials.

In sum, the hearsay information in the redacted portions of Dr. Miller's report was not admissible, and no statute or other authority compelled the circuit court to admit the unredacted report in its entirety.  Thus, we reach the same conclusion as we did previously.  The circuit court did not err by admitting into evidence only portions of Dr. Miller's written report.

## III. CONCLUSION

For the reasons stated, we will affirm the judgment of the circuit court.

Affirmed.